IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Darrel Anthony Watkins, | ) |
|                            Plaintiff, | )  Civil Action No.2:12-cv-01399-MGL-BHH |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| Sgt. Hewitt, *Chas County Sheriff Office*; | ) |
| Ms. Jenkins; and Ms. Hoffman, | ) |
|                            Defendants. | ) |

The Plaintiff, a state prisoner proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983.[1] This matter is before the Court upon a the following motions: (a) a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, filed by Defendants Jenkins and Hewitt (Dkt. No. 75); and (b) Defendant Hoffman's[2] Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt. No. 106).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about May 21, 2012 against Defendants Drayton, Frazier, Hoffman, Sprott, and Hewitt. (See Dkt. No. 1.) On October 4, 2012, the undersigned recommended the dismissal of Defendants Drayton, Frazier, and Hoffman. (Dkt. No. 27.) On or about January 3, 2013, Plaintiff filed a Motion to Amend; on February 12, 2013, the undersigned granted Plaintiff's motion. (See Dkt. No. 51; Dkt. No. 59.) At that

---

[1] At the time Plaintiff filed his Complaint, he was a pretrial detainee at the Al Cannon Detention Center. (See Dkt. No. 1.)

[2] Plaintiff spells this Defendant as "Hoffman." (See Dkt. No. 61.) This Defendant states that she is "incorrectly identified in Plaintiff's Amended Complaint" and that the correct spelling is "Huffman." (See Dkt. No. 106-1 at 1 of 13.) For purposes of the instant Report and Recommendation, "Huffman" and "Hoffman" are one in the same.

point, Defendant Sprott was terminated upon Plaintiff's request, and Defendant Jenkins was added as a party defendant. (See Dkt. No. 51; Dkt. No. 61.) On April 12, 2013, Defendants Hewitt and Jenkins filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Dkt. No. 75). By order filed April 16, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal and summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 78.) Plaintiff filed a Response in Opposition to this motion on or about August 13, 2013. (Dkt. No. 112.)

In an Order dated April 19, 2013, the Honorable Mary G. Lewis issued an Order dismissing Defendants Drayton and Frazier but remanding the claims against Defendant Hoffman to the undersigned. (See Dkt. No. 81.) On May 1, 2013, the undersigned issued an order authorizing service of process upon Defendant Hoffman. (Dkt. No. 86.)

On July 9, 2013, Defendant Hoffman filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Dkt. No. 106.) By order filed July 10, 2013, again pursuant to Roseboro, the Plaintiff was advised of the dismissal and summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 107.) Plaintiff filed a Response in Opposition to this motion on or about August 15, 2013. (Dkt. No. 113.)

## **PROCEDURAL FACTS**

Plaintiff, who is currently housed at MacDougall Correctional Institution, alleges claims pursuant to 42 U.S.C. § 1983 for events that occurred while he was a pretrial detainee at the Al Cannon Detention Center (the "Detention Center"). (See Dkt. No. 1; see also Dkt. No. 61.) In his Amended Complaint, Plaintiff alleges that on November 16, 2011, "[i]n unit AIC," he "slipped in a rather large puddle of water while wearing shower shoes (bought off the canteen) which injured [his] right shoulder and caused severe back pain."

2

(Dkt. No. 61 at 3 of 7.) Plaintiff alleges that "medical was called and [Plaintiff] was taken . . . in [a] wheelchair to get x-rays." (Id.) Plaintiff states,

> After being x-rayed the technician said to me your shoulder looks dislocated your [sic] going to need to put it in a sling. I saw the physician asst. of CCOH, Ms. Hoffman and she reported to me the "x-ray is negative." However I continued to have excruciating pain in right shoulder and back.

(Id.)

According to Plaintiff, he "was given an MRI" on December 8, 2011, and "[t]he results returned on December 11, 2011 and showed a labral tear in right shoulder." (Id.) Plaintiff alleges that Defendant Hoffman "prescribed medicine and a sling." (Id.) He complains, however, that she "didn't inform classification that [Plaintiff] was to receive a sling[ and t]herefore[] . . . would be moved to the medical unit." (Id.) He also asserts that Defendant Hoffman failed to inform "c/o staff that [Plaintiff] had a severe back and shoulder injury." (Id.)

Plaintiff alleges that Nurse Rodriguez brought the sling to Plaintiff "on more than one occasion" and informed Defendant Jenkins about Plaintiff's injuries. (Dkt. No. 61 at 4 of 7.) According to Plaintiff, Defendant Jenkins "told Nurse Rodriguez [that Plaintiff] couldn't have the sling." (Id.) Plaintiff complains that Defendant Jenkins failed to "notify her supervisors that [Plaintiff] need[ed] to be moved to the medical unit so that nurses c[ould] bring [Plaintiff] the sling." (Id.)

Plaintiff further alleges that on January 1, 2012, he was taken to the lock-up unit for removing his armband. (Id.) Plaintiff states that when Defendant Hewitt arrived to take Plaintiff to lock-up, Hewitt "informed [Plaintiff] to turn around and put [Plaintiff's] arms behind [his] back," and Plaintiff informed Hewitt that he "was unable because of medical reasons." (Id.) Plaintiff further states,

3

> [I] then explained to [Hewitt] about injuries while placing my hands in front in a non-offensive manner for him to cuff them. Sgt. Hewitt laughed sarcastically and threatened me that if I don't he would make me feel worse. I told him again that I could not put my arm behind my back. Sgt. Hewitt grabbed my right arm spun me around and twisted it behind my back then forced it upward. My shoulder popped loudly and I cried in pain. Ms. Jenkins started laughing as Sgt. Hewitt did this to me. During strip search I told the Sgt. I needed medical attention for my arm that hung loosely by my side. He paid me no attention and had me put in a cell.

(Dkt. No. 61 at 4-5 of 7.) Plaintiff asserts that "[u]pon information and belief it is policy that pre-trial detainees admitted to lock-up AIA be seen by a nurse," but when the nurse "finally arrived it was for blood pressure checks not to check on [Plaintiff]." (Id. at 5.) Plaintiff alleges that he told the nurse what happened, the nurse said she would return, but she never came back. (Id.)

Plaintiff alleges that Defendants Hoffman and Jenkins were deliberately indifferent to his serious medical needs and that Defendant Hewitt used excessive force upon Plaintiff. (Dkt. No. 61 at 6 of 7.) Plaintiff seeks compensatory and punitive damages. (Dkt. No. 61 at 6-7 of 7 .)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is

4

to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, all Defendants seek dismissal and/or summary judgment. (Dkt. No. 75; Dkt. No. 106.) The undersigned will address Hoffman's motion first.

**A. Motion filed by Defendant Hoffman (Dkt. No. 106)**

Defendant Hoffman filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Dkt. No. 106.) Plaintiff's claim against Defendant Hoffman is that she was deliberately indifferent to Plaintiff's serious medical needs. (Dkt. No. 61 at 6 of 7.)

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citations omitted).[3] To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." Id. It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir.

---

[3] Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment. See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle, 429 U.S. 97); see also Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir. 1992).

1999); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

Defendant Hoffman seeks summary judgment on various grounds, asserting, *inter alia*, that the evidence shows she was not deliberately indifferent to Plaintiff's serious medical needs. (See Dkt. No. 106.)[4] The undersigned agrees with Defendant Hoffman. According to Hoffman, she examined Plaintiff on November 16, 2011, after he "presented to the medical unit at the Detention Center complaining that he had fallen and injured his right shoulder and elbow." (Dkt. No. 106-3 at 3 of 5.) Defendant Hoffman says she "ordered x-rays to be taken immediately of Plaintiff's right shoulder and elbow," and the "reviewing radiologist interpreted both x-rays as 'normal.'" (Id.) She states that the radiologist further "indicated '[n]o shoulder separation, fracture or dislocation.'" (Id.) However, "[t]o assist with [Plaintiff's] complaints of pain," she prescribed Tylenol #3. (Id.)

Hoffman states in her Affidavit that she saw Plaintiff again on November 29, 2011 "in relation to his continued complaints of right shoulder pain and new onset of lower back pain." (Id.) At that time, Hoffman "ordered an MRI of the Plaintiff's right shoulder and prescribed additional medication to assist with his complaints of pain." (Id.) Hoffman states that Plaintiff "underwent an MRI at the MUSC Ambulatory Care Center on December 8, 2011," and the report "did reveal a tear of the inferior and posterior labrum, but confirmed that there was no fracture." (Id.) She further states in her Affidavit:

---

[4]Hoffman also asserts that she is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. (See Dkt. No. 106-1 at 5-7.) In her Affidavit, Hoffman states that she is "not aware of any grievances filed against [her] by the Plaintiff regarding [her] care and treatment of him." (Dkt. No. 106-3 at 4 of 5.) Although it is not clear whether Plaintiff exhausted his administrative remedies, Plaintiff did file several grievances related to the instant claims. (See, e.g., Dkt. No. 113-1 at 6-7 of 11.) The undersigned therefore declines to recommend summary judgment to Hoffman on the basis of Plaintiff's alleged failure to exhaust his administrative remedies.

> 8. I next saw the Plaintiff on December 12, 2011 for follow up on his right shoulder pain. At that time Plaintiff reported to me that the pain had decreased but that he still had some pain with movement. The MRI results were reported to the Plaintiff. I discussed Plaintiff's case with the physician and it was decided that Plaintiff should follow treatment with MUSC Department of Orthopedic Surgery. I indicated that Plaintiff "may have a sling" although in my professional opinion this was more of a comfort measure and was not medically necessary. I also prescribed Plaintiff to have a second mat for his bed, although this, too, was a comfort measure only. Pain medications had already been prescribed by me.
>
> 9. As best I can tell, Plaintiff's sole allegation against me is that I should have informed classification and detention staff that he was to receive a sling and that he had a "severe back and shoulder injury." (Amended Complaint, paragraph 9). Both HIPAA and CCOH policy require the confidentiality of an inmate's health record and that such information is protected from disclosure to non-health staff. (See CCOH and Charleston County Detention Center policy NCCHC J-H-02). Thus, all health care staff, including myself, are[] prohibited from disclosing Plaintiff's health care information to detention center staff and officers.
>
> 10. On January 4, 2012, Plaintiff refused to attend his appointment with the MUSC Orthopedic Clinic.

(Dkt. No. 106-3 at 3-4 of 5.)

The undersigned recommends granting summary judgment to Defendant Hoffman. When Hoffman saw Plaintiff on November 16, 2011, the day Plaintiff alleges he fell, Hoffman ordered x-rays of Plaintiff's injured extremity and prescribed Tylenol #3. When Plaintiff returned to medical unit complaining of pain on November 29, 2011, Hoffman ordered an MRI and prescribed additional medication. Hoffman met with Plaintiff on December 12, 2011, to discuss the MRI results. For comfort measures, she indicated that Plaintiff "may have a sling" and a second mat for his bed; she recommended that Plaintiff follow treatment with MUSC Department of Orthopedic Surgery. Plaintiff's version of the events is not materially different from Hoffman's version. (See Dkt. No. 61.) From a review of Plaintiff's Response in Opposition to Defendant Hoffman's motion, it appears that Hoffman is correct that Plaintiff's main complaint against her is that she "told Plaintiff he

7

'may have a sling' and second mat for injuries but did not order/special[ly] instruct[ or] inform classification or c/o staff, so that there would be a valid order for Plaintiff to show that he sustained injury, thus be handled as such." (Dkt. No. 113 at 4-5 of 9.) Such a failure does not constitute deliberate indifference to a serious medical need. At the claim's very best, Plaintiff's complaint that Hoffman failed to notify staff that Plaintiff was injured and could have a sling sounds in negligence, not deliberate indifference. See, e.g., Lamb v. Kirkland Corr. Inst. Med. Staff, Civ. A. No. 8:08-3558-CMC-BHH, 2008 WL 5076860, at *3 (D.S.C. Nov. 21, 2008) ("Plaintiff fails to allege any facts other than he did not receive a cast as required by Defendant's policy. At most, this sounds in negligence, and negligent or incorrect medical treatment is not actionable under § 1983."); see also Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard-a showing of mere negligence will not meet it."). Furthermore, there is no evidence that Defendant Hoffman acted with the sufficiently culpable state of mind to constitute deliberate indifference. The undersigned therefore recommends granting summary judgment to Defendant Hoffman.

**B. Motion filed by Defendants Jenkins and Hewitt (Dkt. No. 75)**

Defendants Jenkins and Hewitt filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Dkt. No. 75.) Plaintiff's claim against Defendant Jenkins is that Jenkins was deliberately indifferent to Plaintiff's serious medical need by not allowing Plaintiff to have a sling and by failing to "notify her supervisors that [Plaintiff] need[ed] to be moved to the medical unit so that nurses c[ould] bring [Plaintiff] the sling." (Dkt. No. 61 at 4, 6 of 7.) Plaintiff's claim against Jenkins fails. Plaintiff himself alleges that Defendant Hoffman failed to "inform classification that [Plaintiff] was to receive a sling" and that Plaintiff "would be moved to the medical unit." (Id. at 3 of 7.) There is a dispute about whether Jenkins denied Plaintiff the sling. Plaintiff states, in his Verified Amended Complaint, that

Nurse Rodriguez "brought the ordered sling" on "more than one occasion," but Jenkins–after Plaintiff informed Jenkins of his injuries–"told Nurse Rodriguez [that Plaintiff] couldn't have the sling." (Id. at 4 of 7.) On the other hand, Jenkins states in her Affidavit that she had no knowledge of Plaintiff's injury, "never indicated to anyone . . . that the Plaintiff should be denied the use of a sling," does "not have the authority to deny the Plaintiff a medically issued sling," and in fact had no knowledge of Plaintiff's alleged injuries until service of the instant lawsuit. (Jenkins Aff. ¶¶ 11-15.) This dispute in the facts is not material in this case. As discussed above, the denial of a sling in these circumstances simply does not constitute deliberate indifference to a serious medical need.

Plaintiff's claim against Defendant Hewitt is a claim of excessive force. (Dkt. No. 61 at 6 of 7.) Excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 243-44 (1983); see also Young v. Prince George's County, Maryland, 355 F.3d 751, 758 (4th Cir. 2004). To succeed on an excessive force claim under the Due Process Clause of the Fourteenth Amendment, Plaintiff must show that Defendants "inflicted unnecessary and wanton pain and suffering." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998) (citing Whitley v. Albers, 475 U.S. 312, 320 (1991)), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010); see also Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008). As the Fourth Circuit stated in Orem,

> "In determining whether [this] constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).

Orem, 523 F.3d at 446.

9

In Plaintiff's Verified Amended Complaint, Plaintiff himself alleges that he was being taken to the lock-up unit for removing his armband. (Dkt. No. 61 at 4 of 7.) The Plaintiff's version of events and Defendant Hewitt's version of events differ in Hewitt's alleged awareness–or lack thereof–of Plaintiff's inability to put his arms behind his back. Plaintiff states in his Verified Amended Complaint that when Hewitt arrived to take Plaintiff to lock-up, and told Plaintiff to turn around and put his arms behind his back, Plaintiff told Hewitt that he "was unable because of medical reasons." (Dkt. No. 61 at 4 of 7.) According to Hewitt, however, Plaintiff did not "indicate he was in pain or otherwise unable to have his hands handcuffed behind his back," and Hewitt did not "forcibly place the Plaintiff's arms behind his back." (Hewitt Aff. ¶¶ 6-7.) In his Response in Opposition to Hewitt's Motion for Summary Judgment, Plaintiff describes the events as follows:

> Sgt. Hewett had prior knowledge of Plaintiff's injuries to shoulder and back and was told twice by Plaintiff before incident. Sgt. Hewett laughed and threatened Plaintiff. Then spun Plaintiff around twisted the right arm and forced it upward. Plaintiff's shoulder popped loudly and Plaintiff cried in pain.

(Dkt. No. 112 at 5-6 of 9.)[5]

The undersigned recommends denying Hewitt's Motion for Summary Judgment. Even under Plaintiff's version of the events, at least some application of force was warranted, as it is undisputed that Plaintiff was being taken to lock-up for removing his arm band. However, Plaintiff's claim of excessive force against Hewitt centers *not on the fact that Hewitt handcuffed Plaintiff*, but instead on the fact that *Hewitt handcuffed Plaintiff behind Plaintiff's back* with knowledge that doing so would injure Plaintiff. Although the case *sub judice* is not identical, the undersigned finds Bane v. Virginia Department of Corrections, 267 F. Supp. 2d 514 (W.D. Va. 2003), instructive. In Bane, the plaintiff alleged

---

[5]Plaintiff certified "under penalty of perjury" that the statements made in his Response are "true and correct." (Dkt. No. 112 at 9 of 9.)

that Defendant Hockett, having knowledge of a medical waiver indicating the plaintiff was not to be cuffed behind his back, Hockett "chose to disregard the waiver and ordered his subordinates to violate that order." Bane, 267 F. Supp. 2d at 531. The court stated,

> As to the claim of excessive force, viewing the facts in the light most favorable to the Plaintiff, it appears that Hockett ordered Short to handcuff the Plaintiff with his arms in back knowing that such an action would cause him pain. As the act of handcuffing is the act that constitutes wanton infliction of physical pain, Hockett's decision to order performance of the act would constitute excessive force.

Id. at 531-32. Several other courts have reached similar conclusions. See, e.g., Romero v. Barnett, Civ. A. No. DKC-09-2371, 2010 WL 3056628, at *3 (D. Md. Aug. 2, 2010) ("Where, as here, there is a dispute of material fact as to whether the use of restraints was knowingly applied behind Romero's back in variance with a medical order to be cuffed in front and the objective record shows that he sustained an injury and required medical treatment and therapy for a sprained or dislocated shoulder, summary judgment shall be denied as to this claim.").

In both Bane and Romero, medical orders called for the plaintiffs to be handcuffed in front. In the instant case, however, an exhibit submitted by the Plaintiff indicates that a request from the Carolina Center for Occupational Health to "place handcuffs in front for a shoulder injury" is dated January 13, 2012, well after the alleged use of excessive force by Defendant Hewitt. (See Dkt. No. 113-1 at 10 of 11.) Although it is undisputed that no medical order was in place during the time in question, under Plaintiff's version of events, Hewitt was well aware of Plaintiff's condition, having "prior knowledge of Plaintiff's injuries to [his] shoulder and back" and being told by Plaintiff that Plaintiff could not be cuffed in front due to medical reasons. According to Plaintiff, Hewitt "laughed" and then forced Plaintiff's arms behind Plaintiff's back. (See Dkt. No. 112 at 5-6 of 9.) Taking the facts in the light most favorable to the Plaintiff, a reasonable jury could conclude that Hewitt used

excessive force upon Plaintiff. See Bane, 267 F. Supp. 2d 514; Romero, 2010 WL 3056628; Bustamante v. Superior Court of Cal., Civ. A. No. C 11-3492 SBA (PR), 2012 WL 2150242, at *2 (N.D. Cal. June 12, 2012); cf. Fisher v. City of Las Cruces, 584 F.3d 888, 896 (10th Cir. 2009) (stating, in the context of evaluating a claim of excessive force under the Fourth Amendment, "[A] reasonable jury could find the officers in this case knew that (1) Fisher was generally cooperative, (2) he suffered from grave injuries in need of immediate medical attention, and (3) the actions the officers took could have seriously aggravated his injuries. In such circumstances, a finding that the officers used greater force than would have been reasonably necessary can hardly be ruled beyond the pale of a triable claim."); Walton v. City of Southfield, 995 F.2d 1331, 1342 (6th Cir.1993) superseded by statute on other grounds as stated in Livermore ex rel. Rohm v. Lubelan, 476 F.3d 397, 407–08 (6th Cir.2007) (affirming denial of summary judgment on Fourth Amendment excessive force claim where, under the plaintiff's version of the events, she "begged not to be handcuffed because of her injured shoulder," but under the officer's version of events, the plaintiff "never told him why she did not want to be handcuffed, and only told him her shoulder was hurting when they were traveling to the station"). The undersigned therefore recommends denying Hewitt's Motion for Summary Judgment.[6]

---

[6] Hewitt makes two other arguments worth mention; he argued he is entitled to summary judgment because (a) Plaintiff failed to exhaust his administrative remedies, and (b) Hewitt is entitled to qualified immunity. (See generally Dkt. No. 75.) Plaintiff contends in opposition that he "has shown that grievances were filed about incidents in amended complaint and that prison guards either didn't process grievances or discarded them from file." (Dkt. No. 112 at 4 of 9.) "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality." Zander v. Lappin, 415 Fed. App'x 491, 492 (4th Cir. Mar. 10, 2011) (quoting Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)). The district court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Id. (quoting Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)). In the instant case, Plaintiff submitted a grievance related to Hewitt's alleged use of excessive force, and this grievance also states that Plaintiff "ha[s] filed this [grievance] two times already." (See Dkt. No. 112-1 at 4 of 9.) Though the writing in the "Findings and Recommendations"

**CONCLUSION**

Wherefore, it is RECOMMENDED that Defendant Hoffman's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt. No. 106) be GRANTED. It is further RECOMMENDED that the Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt. No. 75), filed by Defendants Jenkins and Hewitt be GRANTED IN PART and DENIED IN PART. Specifically, it is recommended that summary judgment be granted as to Jenkins and denied as to Hewitt.

IT IS SO RECOMMENDED.

                                                s/Bruce Howe Hendricks
                                                United States Magistrate Judge

January 7, 2014
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

section is nearly indecipherable, it appears this grievance was rejected because it was not filed within five days of the event in question. (Id.) In light of the fact that Plaintiff did submit at least one grievance on the alleged use of excessive force, and Plaintiff's argument that officials interfered with his ability to exhaust, the undersigned cannot recommend granting summary judgment to Hewitt on Hewitt's argument that Plaintiff failed to exhaust his administrative remedies.

    Hewitt also moved for summary judgment on the basis of qualified immunity. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009).

    Given the material disputed facts, the undersigned recommends concluding that Hewitt is not entitled to qualified immunity. Taking the evidence in the light most favorable to Plaintiff, Hewitt handcuffed Plaintiff behind his back despite having knowledge of Plaintiff's back and shoulder injuries. The right to be free from the use of excessive force in such a circumstance was clearly established, such that it would have been clear to a reasonable individual that such course of action was unconstitutional. See Walton, 995 F.2d at 1342 (affirming the denial of qualified immunity in light of the disputed facts as to whether the officer knew the plaintiff had an injured shoulder).

13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).